Our final argument of the day is Abera v. City of New York Thank you so much Alright, good morning, Mr. Abera. Am I pronouncing your name right? Yes, sir. Abera. You didn't roll the R, but that's okay. Say that again? You didn't roll the R, but that's okay. Okay, I can try. I'm probably a better, more eloquent than Gailey. Mr. Abera. Abera. Abera. Alright, Mr. Abera, you have five minutes, but you reserved one minute for rebuttal. So that gives you four minutes out of the game. You may proceed. Okay. Thank you. I please the court. I please the court. My name is Natanya Abera.  The police have the duty of maintaining law and order. The police are the guardians of public safety and is a duty that runs to all the public equally. The accusers, certainly, but also the accused. The police must therefore be reasonable. The police must therefore act in good faith. Your honors, my case is about a failure of that role. March 9th, 2016, I was at Grant Associates. It was a job placement center, and there was a young woman walking. She's walking along, and she just abruptly stopped. So I was walking behind her at some point, but not directly. I stopped, too, with my hands up. So this is a maneuver, an avoidance maneuver. So I kept going, and apparently she kept going. But as I moved on, two male staff members accosted me and said, we saw what you did. I asked, what do you mean? They said they didn't know. Rather, they said, you know what you did. So they became aggressive, verbally, and heated. So I myself called 911 for assistance. But can I just say, I mean, the issue here is whether the police officers had probable cause to arrest you, right? And so there were two witnesses who said that you touched or accosted the complaining witness, right? Yeah, that's what they said. Well, that's what they said. Right. And our case law generally says that police officers don't have to do much more than listen to eyewitnesses, unless they have some reason to believe that the witnesses are not reliable. Is there some reason in the record that suggests that these witnesses were not reliable, that the police should have been aware of? Well, I'm actually calling the police on them so their job's actually at stake. So I think they would be defensive. But when the police did come, they actually intercepted the police, and I didn't know they were there. So when I finally talked to the police myself, I identified myself as the person that needed your assistance. And the police just pushed past me and said, we don't want to talk to you. We only want to talk to the lady who wasn't in the building at the time. So they pushed past me, and I go running behind them to try to get them to address me, and they would not talk to me. So I moved past that to say there was a video when the first set of policemen came. There was a video in which the staff member offered, and they were looking at the video. This would eventually go to a court. No, no, no. But before the arrest, they reviewed the video? Is that what you're saying? Yes. Right. They reviewed the video. It's the same video that would eventually have to appear in court that the judge's name was Justice Pandit-Durant, who ruled that there was no contact at all. So it kind of makes you wonder, well, what are the police looking at? Let's say for a minute, sir, that we disagree that the video is clear about what it shows or it doesn't show. Do you have any other argument for why there was no probable cause, or is it all on your video? It's mostly on the video. There were witnesses that would have corroborated my side, but the police wouldn't talk to them either. So their testimony isn't included in the record, and it's kind of unfair. So can I ask another question about, you made out a 1983, or you alleged a 1983 claim, and one of the things that needs to be shown in a 1983 claim is a policy or custom. And so if you could explain to me what you think the policy or custom was in this case that we should be concerned about? You mean in terms of, if I'm understanding your question, the policy and custom of the- Police that we should be concerned about, yes, sir. My understanding is that they are to do an investigation, not a huge investigation, but you generally talk to both sides. They get a picture of what is going on. Not to address the person that is in distress or feels he's in distress would not be a demonstration of that, would not be a demonstration of acting reasonable or being in good faith or acting in good faith. I need your help. You can't go past me and go to someone else when I'm addressing you for help. That's a little unfair. So now we're waiting for the person to come up. They're not even in the building, so we're waiting 45 minutes. And they still wouldn't address me. They still wouldn't talk to me or take any statement. So I'm getting a little nervous. The first set of policemen now call another set of policemen for supervision and for dispatch a supervisor. So this is an escalation that is not reasonable. It's an escalation that isn't fair or isn't in good faith. So- You're alleging that the police officers acted inappropriately. Yes, yes, sir. To get to Judge Perez's point. Yes, sir. How is this, what is there in the record to suggest that this is part of a larger policy or custom of the police department? They have been known to, they are given a wide girth of discretion. And so they have the option, apparently, to talk to individuals that they feel they ought to or not talk to individuals that they feel they ought not to. And then they would probably claim, they would claim probable cause, even though they didn't talk to either side. No? All right. So I see you're over, but you've reserved a minute for rebuttal. So let's hear now from Ms. Fillo on behalf of the defendants. Good morning. Mackenzie Fillo for the city. This court should affirm, as Judge Perez noted, the plaintiff hasn't identified any policy that allegedly caused him to be falsely arrested. All he's alleged is that the police, the city negligently, was negligent in training police officers. And under Monell, that's just not enough. Can I ask, isn't my own experience when I've had to call 911 is that I have been asked to stay there so that I can give a statement? Isn't it unusual to not speak to the complainant if they're physically present? The record doesn't reflect whether that's unusual or not. But the facts were really undisputed. He himself in his complaint alleged that he made contact with her. The question really was just about intent. He says it was an accident. She said it didn't feel like an accident. That's not something that can be resolved by talking to him. Whatever he said, they still could have arrested him. There's probable cause when a victim says he rubbed against me. What if we decide that the video was conclusively exonerating? Is there still probable cause? If the court believes that the video is completely exonerating, perhaps there wouldn't be probable cause. But there would still be no claim against the city here because there's no city policy. He's alleged only negligence. And negligence is not enough. He hasn't sued the police officers themselves. He's only suing the city. If his claim is about training, he has to allege and prove deliberate indifference. That is a very strict standard that this case doesn't come anywhere close to meeting. But the video is hardly exonerating. It shows that they bumped into each other. As he himself alleges, he told the 9-1-1, the 9-1-1 tape is in the record. He told 9-1-1, I bumped into her but it was an accident. The video, he alleges in his complaint, I bumped into her but it was an accident. Again, whether it was an accident or intentional, it's not something the police can know for sure. There's always going to be some level of guessing when it comes to intent. And, of course, the probable cause standard doesn't require any kind of certainty and certainly doesn't require the proof beyond a reasonable doubt. We can't be in a position where, I mean, it was certainly, I think you would concede, it was like disruptive and hard experience. And where are the confines between when the police can do whatever they want, disrupt somebody's life, accuse them, arrest them, and when they need to at least do diligence of talking to the complainant. Like where is the line in between there in this circumstance? This court has said repeatedly that once they have probable cause, they're not required to investigate further. They have video of them bumping into each other. He concedes he bumped into her. She said he rubbed against me. He concedes now, I guess the issue is really what happened at the time of the arrest, right? Sure. Isn't that really where we're focused? Yes. So at the time of the arrest, I mean, he hadn't conceded anything. But at the time of the arrest, there were two witnesses who said that Mr. Rivera, a constant, touched the complaining witness, right? That's right. And actually, when he called 911, he did say, I bumped into her, but it was an accident. So he even then was conceding that there was contact that day. And then they had the video, which does seem to show that there was contact. I wasn't clear on this. The record shows that the arresting officers reviewed the video before they arrested Mr. Rivera? The plaintiff testified to that, yes. And then as he noted, they called their supervisor. They got approval from someone else to make sure that they weren't going beyond the bounds of probable cause. They had multiple people saying, he touched me. I mean, unfortunately, gropings happen all the time. It's a crime of opportunity. It only takes a moment. There's no way they could have known for sure whether he did it on purpose or not. But the complaining witness said, he rubbed against me. It was wrong. And they were entitled to rely on that. They had no reason to think she was lying. Thank you. Thank you. Mr. Rivera, you have a minute of rebuttal. Thank you. Regardless of what is said by the opposing counsel, the video does not show any contact at all. The video was reviewed by the following court under Judge Pandit-Durant and ruled that there was no contact at all. And that should stand. It should suffice. My understanding is, under the law of the case, it's not even supposed to be held for review, if I got that right. So, if the first court thinks there is no contact, it even rules me out. But, I mean, according to Ms. Fillo, you said in the 911 call that there was contact, that you, during discovery, during It was a crowded hallway. And there's people going everywhere. And I just stopped and just kept moving. So, if the moment is fast, it may have seemed that way even to me. But the point remains is that the court that was to review the video saw nothing wrong. And I don't understand what the No, no. I mean, the court that reviewed the video, I mean, so the charges were dismissed against you. Yes. The issue is whether the arresting officers knew that there had been no contact or reasonably should have known that the statements being made by these witnesses was false. I think that's the case. I mean, they were looking at the video. I have it with me now. And they're looking at the video. And you could only see me doing this. It's a defense maneuver. My hands are up. So, I don't want to touch the individual. So, my hands are up. And so, I'm not. And I'm on one side. The person's on the other side. So, never direct me behind her. And it's a clear view to my body. So, beyond that, it's like, it rather is not reasonable. It's not in good faith. And it's not reasonable. You can look at the video. And I'm asking you for help. I, myself, am a first responder. And I'm also a medic with New York State Military Forces. And I'm an officer. And as a medical officer, never have I been accused of anything like this. And I've examined women before, female soldiers, and civilians. And never an issue. And I've been serving for 15 years. Now, I call them when you're announcing. Whether or not the officers acted unreasonably. I believe so, sir. Yes. Whether they were not justified in concluding that there was probable cause. Yes, sir. I think that's the case. Because it's pretty obvious according to the video. With me moving fast and she's moving fast and I'm reacting. It only seems that way. But when I looked at the video, there was no contact at all. It really shouldn't be an issue. All right. So, we will reserve the decision. Thank you very much. Thank you. That concludes the arguments on today's calendar. There's one other case, United States v. Lemke, which is on submission. We'll reserve on that as well. And so, with that, I'll ask Ms. Beard to adjourn the court. Thank you very much and have a good day. Court is adjourned. Thank you.